IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARA BRUNSON-PALMER, | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | JURY TRIAL DEMANDED |
| HUMAN SERVICES, OFFICE OF CHILD | : | |
| DEVELOPMENT AND EARLY | : | |
| LEARNING, BUREAU OF | : | ELECTRONICALLY FILED |
| CERTIFICATION SERVICES, | : | |
| NORTHEAST REGIONAL OFFICE, | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Kara Brunson-Palmer ("Ms. Brunson-Palmer"), by her attorneys, Broughal & DeVito, L.L.P., brings this Complaint against Defendant Pennsylvania Department of Human Services, Office of Child Development and Early Learning, Bureau of Certification Services, Northeast Regional Office ("OCDEL").

## NATURE OF ACTION

1.      This is an action raising racial discrimination, racial harassment and retaliation until Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951, et seq. ("PHRA").

2.      Ms. Brunson-Palmer was subjected to a barrage of racially biased and discriminatory conduct including being fired because she is black.  Her claims arise from that discriminatory and racist conduct.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Ms. Brunson-Palmer's claims arise under federal law.

4.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Ms. Brunson-Palmer's state law PHRA claims because they arise from the same events as Ms. Brunson-Palmer's federal claims.

5.      This Court is a proper venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Defendant OCDEL resides in this district for venue purposes and a substantial part of the events giving rise to this cause of action occurred in this District.

## PROCEDURAL PREREQUISITES

6.      Ms. Brunson-Palmer dual-filed a Charge of Discrimination, No. 530-2022-03637 with the United States Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission ("PHRC") on July 21, 2022.

7.      On or about March 3, 2023, the EEOC issued a Determination and Notice of Rights letter.

8.      Notice of Rights letter from EEOC was received less than 90 days before the filing of this Complaint.

## FACTS

9.      Ms. Brunson-Palmer's race is African American.

10.     Ms. Brunson-Palmer's color is black.

11.     Defendant OCDEL is a section of Pennsylvania's Department of Human Services, a State government agency, which has a business address of 100 Lackawanna Avenue, Third Floor, Scranton, Pennsylvania 18503 ("Northeast Office").

12.     Ms. Brunson-Palmer worked in the Northeast Office of OCDEL.

13.     Ms. Brunson-Palmer was hired by Defendant OCDEL on August 19, 2013.

14.     Ms. Brunson-Palmer worked as an Early Learning Program Certification Representative for Defendant OCDEL from August 19, 2013, through her termination on May 25, 2023.

15.     Throughout the time that Ms. Brunson-Palmer worked for Defendant OCDEL, she was the only African American Early Learning Program Certification Representative in the Northeast Office.

16.     During the time period that Ms. Brunson-Palmer worked for Defendant OCDEL, there were a total of approximately 20 Certification Representatives working in the Northeast Office in any one period of time.

17.     Ms. Brunson-Palmer was the only African American employee of the Northeast Office of Defendant OCDEL during the period of time that she worked there.

18.     On information and belief, Ms. Brunson-Palmer was or will be replaced by a non-African American employee.

### Racially Biased Conduct

19.     In 2016, Walter Clatch, a supervisor, ("Mr. Clatch"), stated, "there goes the neighborhood" when Ms. Brunson-Palmer walked into his office.

20.     Ms. Brunson-Palmer complained to Mr. Clatch that that comment was racist.

21.     Defendant OCDEL did not investigate the allegation of a racist comment, no discipline was ever meted out to Mr. Clatch as a result of the comment, and Mr. Clatch said nothing in response to Ms. Brunson-Palmer's complaint.

22.     On repeated occasions between 2016 and 2018, Mr. Clatch, who is white, informed Ms. Brunson-Palmer that he used to have a sound system booming in his car and listen to Biggie and Tupac.

23.     Mr. Clatch would always reference where Ms. Brunson-Palmer was born, which is Brooklyn, and would imitate a Brooklyn accent.

24.     Mr. Clatch did not refer to where white employees were born or imitate accents of the locations where they were born.

25.     During a period of time, Mr. Clatch assigned Ms. Brunson-Palmer to work with clients in Hazleton and informed her that she should watch out for conflict because people in the area are racist.

26.     On information and belief, Mr. Clatch comes from the Hazleton area.

27.     There were other locations besides the Hazleton area where Mr. Clatch could have assigned Ms. Brunson-Palmer if he was truly worried about her working in an area which he perceived to be biased against African Americans.

28.     Mr. Clatch's statement about the Hazleton area being racist made Ms. Brunson-Palmer nervous and was designed to do so.

29.     In the 2017 to 2018 time period, during a retirement dinner for another employee, Ms. Brunson-Palmer was seated at a table, together with coworkers and her supervisor, Mr. Clatch.

30.     While seated at the table, Mr. Clatch stated loudly, in front of all Ms. Brunson-Palmer's co-workers, "Kara, you only got this job for the insurance."

31.    Mr. Clatch's supervisor was present when he made this comment.

32.    The comment about Ms. Brunson-Palmer only getting the job for the insurance singled her out and embarrassed her in front of a table full of white employees.

33.    Mr. Clatch did not subject white employees to the same types of comments as he did Ms. Brunson-Palmer.

34.    Mr. Clatch's supervisors were aware of and heard the comments he made to and about Ms. Brunson-Palmer.

35.    Mr. Clatch received no discipline as a result of his comments to or about Ms. Brunson-Palmer.

36.    In 2017, while Ms. Brunson-Palmer was speaking with someone about a 70's party she had attended, Michelle Matay, another Caucasian Certification Representative, who worked at the Northeast Office, interrupted the conversation and said, "last Halloween I wore black face. I even bought the afro" and asked if Ms. Brunson-Palmer wanted to see the picture, while laughing about it.

37.    Ms. Brunson-Palmer complained to other employees, including Cynthia Korda ("Ms. Korda"), Nicole Moore and Margaret Perugino, about the incident.

38.    Defendant OCDEL did not investigate the incident with Ms. Matay, nor did it discipline Ms. Matay.

39.    On September 21, 2018, Ms. Brunson-Palmer was threatened by a parent so severely that State Troopers had to be called.

40.    Ms. Brunson-Palmer requested that she be moved for her safety.

41.    Her supervisors at the time, Christine Farrell ("Ms. Farrell") and Gina Lynn ("Ms. Lynn"), were unwilling to move her.

42.    In order to receive a move for safety, Ms. Brunson-Palmer had to file a grievance.

43.    In comparison, two white Certification Representatives, Ms. Korda and Ms. Lynn Russin, were immediately moved for their safety after reporting they were threatened.

44.    After filing her grievance for safety and sending an e-mail to her supervisors, Ms. Farrell and Ms. Lynn, about the situation, in direct retaliation, Ms. Brunson-Palmer was suddenly required to send all inspection summaries to Ms. Farrell before sending them out to the provider.

45.    No other Certification Representatives, all of whom were white, were required to send inspection summaries to their supervisors before sending them to the provider.

46.    On April 9, 2019, Ms. Brunson-Palmer was directed to change her phone coverage day when she registered for training for the job on the same day.

47.    Comparatively, white Certification Representatives were permitted to take time off from their phone coverage days and were not asked to change their phone coverage days for training.

48.    In June of 2019, in further retaliation for her complaints regarding the failure to move her for safety and raising issues of race discrimination, Ms. Brunson-Palmer received a negative mid-year performance review that was untrue.

49.    In June 2019, Ms. Brunson-Palmer's son was transported to Children's Hospital of Pennsylvania for a serious injury. Ms. Farrell and Ms. Lynn were aware of the emergency.

50. In response, Ms. Farrell and Ms. Lynn falsely reported that Ms. Brunson-Palmer was AWOL.

51. In comparison, if white employee are out on emergencies, their supervisors will call their phones.

52. No white employee has been reported as AWOL, when they were in the middle of a family emergency of which their supervisors were aware.

53. On June 27, 2019, Ms. Lynn and Ms. Farrell sent an e-mail to secretaries to give Ms. Brunson-Palmer all telephone calls to the office before she had to meet with her Union Business Agent about being reported AWOL. Neither reached out to Ms. Brunson-Palmer by phone before reporting her as AWOL to HR.

54. In comparison, no white Certification Representatives were ever provided all calls before meeting with a Business Agent.

55. Ms. Brunson-Palmer received oral counselling, discipline, on call-out procedures because she was called AWOL. No white Certification Representatives received discipline when they were absent for emergencies.

56. On July 24, 2019, Ms. Brunson-Palmer met with her supervisors to complain about the disparate treatment she was receiving as an African American.

57. Ms. Brunson-Palmer explained that things were required of her and not the other Certification Representatives who were white.

58. In response, Ms. Lynn stated that she would like to start fresh and from scratch. That statement was false.

59.    In October 2019, during the heart of the Black Lives Matter movement, Lori Demart, a white supervisor in the Northeast Office, placed a series of posts on her door which included the phrases Pigs Lives Matter, Horses Lives Matter, Fish Lives Matters, Dog Lives Matter, Pumpkins Lives Matter.

60.    These postings remained on her door for an extended period of time.

61.    The Northeast Office did not require her to take these down.

62.    In November of 2019, Ms. Brunson-Palmer learned that she would need surgery for a workplace injury she suffered in August 2019.

63.    Ms. Brunson-Palmer requested to work modified duty after workers compensation surgery.

64.    Ms. Brunson-Palmer's request was denied by her supervisors.

65.    In comparison, white employees, including Lynn Russin and Michael Gatto were given modified duty on a few occasions when they had workplace injuries.

66.    Similarly, in July 2022, another white co-worker, Margaret Pegrino, was injured on the job and was permitted to work modified duty.

67.    Ms. Brunson-Palmer was required to return to work full duty while recovering from her workplace injury, even though she was physically not able.

68.    Ms. Brunson-Palmer informed Ms. Farrell that she was unable to drive.

69.    In response, Ms. Farrell stated, "the state does not tell you that you have to drive. You just have to be able to get to your facilities. If that means catching the bus, then you have to do so."

70.    Ms. Farrell also instructed Ms. Brunson-Palmer's doctor not to write any restrictions on the Return to Work note because she would not be able to return to work with any restrictions.

71.    This conduct from Ms. Farrell was in direct retaliation for Ms. Brunson-Palmer's having raised a complaint about disparate treatment.

72.    It is also completely different from the way white employees were treated when they had workplace injuries.

73.    On June 28, 2021, after returning to the office from workers' comp surgery, Ms. Farrell started to provide Ms. Brunson-Palmer with lists of renewal inspections only two months in advance, while white employees were provided lists of renewal inspections three months in advance.

74.    In August of 2021, Ms. Brunson-Palmer filed a grievance due the discriminatory actions taken toward her.

75.    The disparate conduct included:  not permitting Ms. Brunson-Palmer to work a third day from home while white Certification Representatives were permitted to do so, and being instructed that she was not permitted to go into the office more than once in a month while white Certification Representatives were permitted to do so.

76.    In August 2021, Ms. Farrell e-mailed Ms. Brunson-Palmer and stated that she needed to contact clerical to receive the first few calls because she was taking half a day.

77.    In comparison, white employees are not required to contact clerical to receive the first few calls when taking half a day.

78.    In March of 2022, Mr. Clatch and Ms. Farrell called Human Resources to ensure that she could not have union representation present when they called to discuss her midpoint review.

79.    In March of 2022, Ms. Brunson-Palmer was denied overtime, even though it had been discussed with her supervisor and approved.

80.    In January 2022, Ms. Brunson-Palmer was informed that her work was unsatisfactory, she would be reevaluated in 90 days, and she would have to report to the office in Scranton for 90 days as of May 2, 2022.

81.    In comparison, Ms. Pegrino and Ms. Russin were also told their work was unsatisfactory and they would be reevaluated in three months, but they were not required to return to the office, even though they were not caught up on caseloads.

82.    In her performance reviews in 2022, Ms. Brunson-Palmer was penalized for things that everybody else in the office was doing but no one else was having occurrences written in their evaluations for it.

83.    Ms. Brunson-Palmer was then written up for not having completed sufficient renewal inspections.

84.    On April 15, 2022, Ms. Brunson-Palmer's doctor instructed Ms. Brunson-Palmer to take leave from work because of the anxiety and stress from her job.

85.    Ms. Farrell and Mr. Clatch then sent Ms. Brunson-Palmer e-mails every time the doctor would extend her leave requiring her to call into the office to one of them as a callout and sent her e-mails with attachments on what is expected upon her return.

86.    White employees who are on leave do not receive e-mails like this, nor do they require white employees to call in as a callout.

87.    As a result of the circumstances in the workplace and in order to hasten her return to the workplace, Ms. Brunson-Palmer requested, as an accommodation, that she be provided with a different chain of command and be able to report to different supervisors.

88.    No investigation was ever conducted as a result of the request for the accommodation.

89.    No dialogue was ever conducted as a result of the request for an accommodation.

90.    Rather, in retaliation for the complaints, Defendant OCDEL terminated Ms. Brunson-Palmer for her absences resulting from their conduct.

## COUNT I
## Discrimination on the Basis of Race and Color Under Title VII and PHRA

91.    Ms. Brunson-Palmer incorporates by reference the foregoing paragraphs 1 through 90 as though they were set forth in full here.

92.    Ms. Brunson-Palmer is an African American/black female.

93.    Ms. Brunson-Palmer was qualified for her position as she was hired by Defendant OCDEL and worked in that capacity for 10 years.

94.    Ms. Brunson-Palmer suffered adverse employment actions when:

- She was treated differently than all white employees as noted above;
- When she received oral counseling for a medical emergency;
- When she received negative performance reviews; and
- When she was fired on May 22, 2023.

95.    As a result of Ms. Brunson-Palmer's race and color, she received less favorable employment terms than similarly situated, white Certification Representatives and was fired.

96.    Ms. Brunson-Palmer suffered damages as a result of the adverse employment actions by Defendant OCDEL.

97.    Ms. Brunson-Palmer suffered significant anxiety and depression as a result of the discriminatory and adverse employment actions she was subjected to by Defendant OCDEL.

WHEREFORE, Plaintiff Kara Brunson-Palmer respectfully requests that judgment be entered in her favor and against Defendant OCDEL and that she receive an award of back pay, front pay, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

## COUNT II
### Harassment on the Basis of Race and Color Under Title VII and PHRA

98.    Ms. Brunson-Palmer incorporates here by reference the foregoing paragraphs 1 through 97 as though they were set forth in full.

99.    Defendant OCDEL is responsible for the actions of its supervisors.

100.    Ms. Brunson-Palmer was subjected to a hostile work environment rife with racist comments, racist actions, racist discrimination and retaliation by Defendant's supervisors.

101.    The racial harassment, as set forth above, was continuous, pervasive and regular throughout her employment.

102.    Ms. Brunson-Palmer made multiple complaints to Defendant OCDEL concerning the discriminatory environment in which she was forced to work, to no avail.

103.    Ms. Brunson-Palmer suffered this racial harassment because she is African American and black.

104.    The racial harassment created a hostile work environment and affected Ms. Brunson-Palmer's ability to work in her position.

105.    The racial harassment, which was severe and pervasive, would detrimentally affect a reasonable person in the same position.

WHEREFORE, Plaintiff Kara Brunson-Palmer respectfully requests that judgment be entered in her favor and against Defendant OCDEL and that she receive an award of back pay, front pay, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

## COUNT III
## RETALIATION UNDER TITLE VII AND PHRA

106.    Ms. Brunson-Palmer incorporates here by reference the foregoing paragraphs 1 through 105 as though they were set forth in full.

107.    As set forth above, Ms. Brunson-Palmer made repeated complaints to Defendant OCDEL regarding racial discrimination.

108.    Ms. Brunson-Palmer's complaints related to discriminatory conduct by her supervisors, as well as racial harassment by her supervisors.

109.    Ms. Brunson-Palmer's complaints were protected activities under Title VII and the PHRA.

110.    Defendant OCDEL failed to adequately investigate Ms. Brunson-Palmer's complaints of discriminatory conduct.

111.    In retaliation for the complaints, Defendant OCDEL disciplined Ms. Brunson-Palmer and fired her.

112.    Ms. Brunson-Palmer's termination was a direct result of her complaints to Defendant OCDEL, and her filing of an EEOC Charge against Defendant OCDEL.

113. Defendant OCDEL was aware of the Charge of Discrimination, which was filed by Ms. Brunson-Palmer before it fired her.

114. No white Certification Representatives were fired or disciplined as a result of making complaints.

WHEREORE, Plaintiff Kara Brunson-Palmer respectfully requests that judgment be entered in her favor and against Defendant OCDEL and that she receive an award of back pay, front pay, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

## JURY DEMAND

115. Plaintiff Kara Brunson-Palmer demands a trial by jury on all claims and issues so triable.

BROUGHAL & DeVITO, L.L.P.

Date: 5/31/2023

By:

**JOHN S. HARRISON, ESQUIRE**
Attorney I.D. #53864
**ERIKA A. FARKAS, ESQUIRE**
Attorney I.D. #313686
38 W. Market Street
Bethlehem, PA 18018
Telephone No.: (610) 865-3664
Facsimile No.: (610) 865-0969
johnharrison@broughal-devito.com
erikafarkas@broughal-devito.com
*Attorneys for Plaintiff*